### Elizabeth King v. Alfred B. Moore.

The action of the wife for exempt property taken on execution, cannot be defeated by showing that the property was turned out by the husband to be levied upon.

The statute exempting from execution a sufficient quantity of hay, grain, feed and roots for properly keeping for six months the animals specified as exempt from execution, does not exempt any more of those articles than may be necessary for keeping such of the animals mentioned as the debtor has at the time of the levy.

Whether, the statute exempting "provisions for the comfortable subsistence of a householder and family for six months" exempts growing crops of corn and potatoes recently planted, and which have just become visible above ground, quere—the Court being equally divided on the question.

Where a case is made after judgment for review by the Supreme Court upon the whole facts, it should embody all the evidence given on the trial.

*Submitted October 8th.  Decided November 13th.*

Case made after judgment from St. Joseph Circuit.

Elizabeth King, the wife of Amos S. King, brought an action of trespass against Moore, before a justice of the peace, for the taking of certain corn and potatoes, and corn fodder, on an execution against said Amos—the said articles being claimed as exempt from execution.

The cause being removed by appeal to the Circuit Court, it was admitted by the parties on the trial there, that said Amos was the owner of four acres of land in said county, upon which he resided with his family, and that all his personal property did not. exceed two hundred dollars in value.  That in May, 1858, he planted about

KING v. MOORE.

two acres of his land to corn and potatoes, and that on
the third day of June, 1858, Moore, as constable, levied
upon these crops, which had just vegetated and were
visible above ground, and made an endorsement of the
levy upon the execution, reciting that they were turned
out to him by said Amos. That after this levy the exe-
cution was allowed to rest until the corn and potatoes
were fit for harvest, when Moore sold them upon the
execution. That when the sale was made said Amos had
no horse, cow or other animal, except one pig.

The cause being tried without a jury, the Court found
that the corn and potatoes were planted by said Amos
for the use of his family. That there was not enough
for the use of the family for six months, and to feed
two cows and fatten two swine. That the family alone
would require all the potatoes and twenty-six bushels of
corn for food in six months, the value of which was
found to be $19.88. The Circuit Court held the whole
to be exempt, and rendered judgment against Moore for
$34.80 and costs.

*W. Sadler* for plaintiff.

*C. Upson* for defendant.

CHRISTIANCY J.:

Several questions have been raised in this case, all of
which, however, may be resolved in the three following:

*First.* Can the action of the wife, under § 3294 of
Compiled Laws, for property taken on execution against
the husband, and which was exempt, be defeated by showing
that the property was turned out by the husband to be
levied upon?

In answer to this question, we think it clear her action
cannot thus be defeated. The exemption is intended quite
as much for the benefit of the wife and family, as that
of the husband. The same reasoning applies here as in

the case of a homestead exemption. See *Beecher v. Baldy*, 7 *Mich.* 488, and *Dye v. Mann* [*ante,* 291]. This action would seem to have been given to the wife to prevent any waiver of the exemption by the husband; as, without such waiver, the action might as well be brought by himself.

*Second.* Does the ninth subdivision of the 27th section chapter 131 Compiled Laws, exempting from execution "a sufficient quantity of hay, grain, feed and roots for properly keeping for six months" the animals referred to, apply to a case where the debtor has no. such animals? or, in other words, does. it exempt any more "hay, grain, feed and roots," than may be necessary for keeping such of the animals mentioned as the debtor has at the time of the levy?

In answer to this question, we are all clearly of opinion that this exemption cannot extend beyond what is sufficient to keep such of the animals as the defendant may have at the time of the levy. This exemption is given to render that of the animals practically beneficial; as it would be of little use to exempt the animals if the food necessary for their sustenance were liable to be taken from the owner. But if the debtor have none of the animals specified, the reason for exempting the food for them wholly fails. If he has none of the animals which the statute exempts, there is nothing upon which this exemption of the animals can operate, and the exemption of food for such animals, which is dependent upon it, fails with it. If the statute, in cases where the debtor has not the full amount of the property exempted by this section, had provided an exemption of money or other property for the purpose of enabling him to purchase enough to make up the deficiency, there might be good reason for holding the feed for the animals exempted, though he had not the animals at the time of the levy; but the statute has adopted no such principle.

KING v. MOORE.

*Third.* Does the sixth subdivision of the same section, exempting " provisions for the comfortable subsistence of a house holder and family for six months," exempt growing crops of corn and potatoes, recently planted, and which have just become visible above the ground?

In answering this question, it is important to determine whether the exemption is to be governed by the state of facts existing at the time of the levy, or at the time of sale, or at some intermediate period. It is quite clear, I think, that whatever under this statute may be levied upon may also be sold, except so far as the statute has otherwise provided. Where specific articles are exempt by the statute, they can neither be taken nor sold on the execution. But where the exemption is of property of a certain class or species, and only to a certain amount or value, and the debtor has property of that class or species exceeding the amount, some mode must be adopted for determining the particular portion or articles to which the exemption shall apply. It is accordingly provided that when a levy in such case shall be made, " the officer levying such execution may make an inventory of the whole of such property, and cause the same to be appraised at its cash value by two disinterested freeholders of the township where such property may be," &c.: § 28 *same chapter.* "Upon such inventory and appraisal being completed, the defendant in execution or his authorized agent may select from such inventory an amount of such property not exceeding, according to such appraisal, the amount or value exempted by law from execution: but if neither such defendant nor his agent shall appear and make such selection, the officer shall make the same for him": § 29 *same chapter.* These sections would certainly apply to the exemption of provisions, when the defendant has more than the amount exempted.

Again, by section thirty - one it is provided, " whenever the defendant in an execution shall have cows, sheep, swine

KING v. MOORE.

or other animals or articles, some of which are exempt by law from sale on execution, and some of which are not so exempt, the officer may take all such horses, cows, sheep, swine or other animals or articles into his possession, and the defendant or his authorized agent may, immediately on being notified of the levy, select so many thereof as are exempt by law from execution, but if the defendant be absent, or neglect to make such selection, on being notified, the officer shall make the same for him."

In all cases not otherwise provided for in sections twenty-eight, twenty-nine or thirty-one, above cited, the right to levy implies also the right to sell; and the one is co-extensive with the other, so far as the question of exemption is involved: and in all such cases, at least, the right to levy and the right of exemption would seem to take effect at the same time. Is it otherwise in the cases provided for in the three sections just referred to? I think not. It is evident, I think, from the language of these sections that the selection is to be made at, or immediately after, the levy, and with reference to the then existing facts. Under the twenty-eighth section, " when a levy shall be made," the officer is to make the inventory—" upon such inventory being completed" the defendant is to select. If he does not appear and make the selection, the officer is to make the selection for him. How long must the officer wait for the defendant to appear and select? Clearly, I think, he need not wait one day. When is the defendant to select under the thirty-first section? The statute answers "immediately on being notified of the levy." But if the officer *may* delay to make the· inventory, and to have the selection completed, he certainly is not bound to wait, but has a right to proceed at once; and that would be a novel species of statute exemption which might be allowed or defeated at the option of the officer.

The right and the extent of the exemption, in these cases must, then, depend upon the state of the property and

the state of facts *existing at the time of the levy, or at the latest, the time within which the selection is to be made;* and just as clearly must this be the case when the right to sell is co-extensive with the right to levy.

As the statute, in exempting provisions "for the comfortable subsistence of the householder and family for six months," does not specify any particular kind of provisions, doubtless anything which is susceptible of use as provisions, may be exempt under this designation; and any growing crops which, at the time of the levy, had reached that stage of growth or maturity which would render them susceptible of such use, might fall within the exemption: — *Carpenter v. Herrington,* 25 *Wend.* 370. But corn and potatoes so recently planted as to be but just visible above the ground, are wholly incapable of use as food, and in that state can with no propriety be called "provisions." They may or may not, in the ordinary course of vegetation, assume a shape, or produce fruit, fit for food, before the time for sale on the execution (which by the twenty-sixth section is not to be until they are ripe or fit to be harvested), and it seems to have been thought by the Court below that for this reason they ought to be exempt while growing, when the owner has not otherwise the requisite amount of provisions. This would doubtless have been a reasonable provision, had the Legislature seen fit so to provide. But we are not to decide what we think the Legislature ought to have done, but what they have done. At common law all such property was liable to execution, and nothing was exempt as food for the support of a family. The exemption of provisions, like most other exemptions, rests entirely upon the statutes. Had the Legislature seen fit only to establish certain principles upon which exemptions were to be made, we might exempt anything coming within the principle thus established; but they have chosen to make their exemptions specific, to define the classes of property to be exempt, the circumstances under which they are to be

allowed, as well as the time when the right of exemption shall attach. The statute exempts nothing *as* growing crops, or by that designation; and such crops, to be exempt as provisions, must be capable of being used as such when the exemption takes effect.

This case is therefore no more within the equity of the statute than many others which might be put, but which are clearly beyond its provisions. Thus, a debtor at the time of the levy has six months provisions in the house, which are exempt and not taken on the execution, but the levy is made upon other property of the same description. A few days after the levy, the provisions in the house are destroyed, lost or stolen. It will hardly be contended that the debtor can call upon the officer for enough of the provisions levied upon to make up the deficiency; yet such a case would come quite as clearly within the *benevolent purposes* of the statute as the present. I have been unable to find anything in the statute to warrant the inference that an exemption was intended to be allowed, based upon any change which might take place in the state of facts, or of the property, or of the debtor's circumstances at any time between the levy and the sale.

The judgment should, I think, be reversed, with costs, and a new trial granted.

It seems to have been the intention in framing this case to submit it to this Court for review upon the evidence as well as the law. But the case is not so framed as to permit us to do this. The whole evidence does not purport to be given: but only so much as "was deemed material to the questions to be raised." When we review a case upon the evidence, we must have the means of judging for ourselves what is and what is not material.

MANNING J. concurred.

CAMPBELL J. :

I concur in holding that nothing is exempt for keeping

animals, where the party claiming the exemption does not own or possess such animals. The judgment below is erroneous, so far as it allows any exemption for animals not owned or possessed.

I think, however, that growing crops of grain, or vegetables, suitable for family consumption, are within the exemption of the statute. If, at the time of the levy, a defendant in execution has enough provisions on hand for six months, then of course there is no right to any more. And a levy made on growing crops would then be as valid as a levy on any surplus provisions on hand. And such levy would not, if valid when made, be affected by any subsequent destruction, sale, or other disposition of the exempted property. But where a family does not possess a supply for six months, then I think they have a right to look to their growing crops for enough to make up the deficiency. Such crops are designed for human sustenance, and are frequently the chief reliance of their owners. There is no more difficulty in making the selection, in this class of cases, than in making the sale. If the law permitted a growing crop to be sold before maturity, there might be more difficulty in making it. But no sale can be made until the crops are ready for gathering; and it is perfectly easy to make at that time all necessary deductions.

It is undoubtedly true that an officer cannot at once make an inventory or appraisal, so as to allow the exempted amount to be set apart from the rest. But the law does not require this to be done at once, in regard to any property; and it may be done at any time before it is noticed for sale, if not at any time before actual sale. And a levy upon growing crops is kept alive, by statute, upon all executions, until thirty days after the crops mature:—*Comp. L.* § 4464. The statute authorizing the commencement of suits by attachment requires an inventory and appraisal in all cases. But it has never been supposed growing crops could not be attached.

These exemptions have never been construed technically against the right claimed; and the literal provisions of the statute have been interpreted by their obvious design. Thus, where, under a law from which ours is copied, " all sheep to the number of ten, with their fleeces, and the yarn or cloth manufactured from the same;" are exempt, cloth made from wool owned by a person who never had any sheep, was held exempt: — *Hall v. Penney*, 11 *Wend.* 44. The same doctrine was re-affirmed in *Brackett v. Watkins*, 21 *Wend.* 68. In the case of *Carpenter v. Herrington*, 25 *Wend.* 370, an exemption was allowed where potatoes planted on shares on another man's ground, by a defendant in execution, were sold before they were dug. It does not appear whether they were levied upon before maturity or not; but the language of the Court does not go upon any idea that this was material. Nelson Ch. J. in deciding the case says: " As the necessary vegetables are absolutely exempt, they will be protected in any stage of the process of obtaining them for the family use; whether by planting them or in any other way."

If growing crops are not exempt, the entire policy of the law must fail in regard to a large class of cases which are evidently designed to be protected. It seems to me that such a construction as covers them is both natural and just; and in no way violates either the letter or spirit of the law.

I think that judgment should be rendered upon the finding for all the provisions found necessary for the family, and such animals as they are shown to possess. This appears from the finding to be $19.88. Judgment should be reversed, except as to the sum of $19.88, with costs of this Court in favor of defendant, and affirmed to that amount.

MARTIN CH. J. concurred.

The Court being thus divided on one point, the judgment was reversed, with costs of this Court, except as to $19.88, and affirmed as to that amount.